1
2
3
4
5
6
7
8              UNITED STATES DISTRICT COURT
9             SOUTHERN DISTRICT OF CALIFORNIA
10

11  A. WAHEED CHAUDRY,                    Case No.:  21cv1847-GPC(AHG)
12                           Plaintiff,
                                          **ORDER GRANTING DEFENDANTS'**
13  v.                                    **MOTIONS TO DISMISS WITH**
                                          **PREJUDICE FOR LACK OF**
14  COUNTY OF SAN DIEGO; TODD             **SUBJECT MATTER JURISDICTION**
    MCCRACKEN; LUZETTE WARNER;
15  ELIZABETH MILLER; ALEJANDRO           **[Dkt. Nos. 8, 9, 10.]**
    CHAVIRA, AND Does 1 through 25,
16
                             Defendant.
17

18

19         Defendants Todd McCracken and Luzette Werner (erroneously sued as Luzette

20  Warner) ("Assessor Defendants") filed a motion to dismiss pursuant to Federal Rule of

21  Civil Procedure ("Rule") 12(b)(1) & 12(b)(6).  (Dkt. No. 8.)  Defendants Alejandro

22  Chavira and Elizabeth Miller ("AAB Defendants") also filed a motion to dismiss

23  pursuant to Rule 12(b)(1) & 12(b)(6).  (Dkt. No. 10.)  Lastly, Defendant County of San

24  Diego ("County") filed a motion to dismiss pursuant to Rule 12(b)(1) & 12(b)(6) and

25  joined in Defendants Todd McCracken and Luzette Werner's motion to dismiss.  (Dkt.

26

27

28

No. 9.)  Plaintiff filed an opposition on September 9, 2022.[1]  (Dkt. No. 24.)  Replies were filed on September 13, 2022.  (Dkt. Nos. 25, 26.)  Based on the reasoning below, the Court GRANTS all Defendants' motions to dismiss with prejudice for lack of subject matter jurisdiction.

### Background

Plaintiff A. Waheed Chaudry ("Plaintiff"), proceeding pro se, filed a complaint against Defendants County of San Diego ("County"), Todd McCracken ("McCracken"), Luzette Werner ("Werner"), erroneously sued as Luzette Warner, Elizabeth Miller ("Miller") and Alejandro Chavira ("Chavira") for violations of federal and state laws related to a dispute with his California property tax assessment and Defendants' alleged unconstitutional administration of the state tax system governing assessment appeals. (Dkt. No. 1, Compl.)

Plaintiff is a resident of the County of San Diego, California.  (*Id.* ¶ 6.)  Defendant McCracken is an employee and/or agent of the Assessor and County who was or is a Manager or Supervisor reporting to the County Assessor.  (*Id.* ¶ 7.)  Defendant Werner is an employee and/or agent of the Assessor and County, who was or is an appraiser reporting to the County Assessor.  (*Id.* ¶ 8.)  Defendant Miller is an employee and/or agent of the Assessment Appeals Section and the County, who was or is a supervisor reporting to Assessment Appeal Board and the County.  (*Id*. ¶ 9.)  Defendant Chavira is an employee and/or agent of the Assessor Appeals Section/Assessment Appeal Board and the County, directly reporting to Defendant Supervisor Miller.  (*Id.* ¶ 10.)

Plaintiff owns ½ interest in the real property located at 12212 Spruce Grove Place, San Diego, CA, Assessor Parcel Number 3200711900 ("Property").  (*Id.* ¶ 13.)  Around

---

[1] In reply, Defendants object to the 62 page opposition filed without leave of court.  Plaintiff filed a 62-page opposition along with a 53 page declaration with supporting exhibits. (Dkt. No. 24; Dkt. No. 24-1.)  This district's Civil Local Rules provide that an opposition must not exceed 25 pages in length.  *See* S.D. Local. Civ. R. 7.1(h).  In light of the fact that Plaintiff is proceeding pro se, and the Court dismisses the action with prejudice, there is no prejudice to Defendants in allowing Plaintiff to file an over-sized opposition.

November 28, 2016, Plaintiff recorded a quit claim deed transferring his ½ interest in the Property to his brother.  (*Id.* ¶ 14).  Plaintiff's brother declined to accept the Property so Plaintiff recorded a recission deed on May 17, 2017.  (*Id.*)

On May 11, 2017, the Assessor reassessed the Property based on the November 28, 2016 change in ownership for a base value of $1,641,080.  (*Id.* ¶ 15).  Following this assessment, Plaintiff claims that he spoke twice with Defendant Werner, an appraiser in the Assessor's Office, and that Werner refused to meet with him in person and would not allow him to inspect the file regarding the assessment without first putting his request in writing to identify each document he wanted, and the request would be sent to the Division Chief for approval.  (*Id.* ¶¶ 16-18.)  Plaintiff's last contact with Werner was on November 27, 2017.  (*Id.* ¶ 16.)

On November 30, 2017, on advice of a clerk in the Assessment Appeals Section, Plaintiff filed two separate appeals applications with the Assessment Appeal Board ("AAB"), Application No. 1702277 and Application No. 1702039, challenging the assessed base value as of 1/1/2017.  (*Id.* ¶ 19; Dkt. No. 8-2, Ds' RJN,[2] Exs. A & B.) Plaintiff did not designate the applications as claims for refund because he was advised by the clerk in the Assessment Appeals Section not to check the "Yes" box for a claim for refund.  (Dkt. No. 1, Compl. ¶ 21; Dkt. No. 8-2, Ds' RJN Exs. A-B.)  He was told that if he did not check the "Yes" box, he would have four years to submit his claim for refund to the San Diego County Board of Supervisors.  (Dkt. No. 1, Compl. ¶ 21.)

---

[2] Assessor Defendants filed a request for judicial notice of administrative filings and opinions related with Plaintiff's administrative appeals.  (Dkt. No. 8-2, Ds' RJN.)  Plaintiff did not file an objection.  The request for judicial notice is granted on two grounds.  First, under the incorporation by reference doctrine, which "is a judicially created doctrine", the court "treats certain documents as though they are part of the complaint itself."  *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 999 (9th Cir. 2018). *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001) (citing *Parrino v. FHP, Inc.*, 146 F.3d 699, 705-06 (9th Cir. 1998).  Second, a court may take judicial notice of "matters of public record." *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001)*; see* Fed. R. Evid. 201.  Here, the Court grants Defendants' unopposed request for judicial notice based on the incorporation by reference doctrine and because some documents are matters of public record.

On August 23, 2018, Plaintiff received hearing notices set for October 4, 2018. (*Id.* ¶ 24).  Plaintiff alleges the notices were defective because the postage stamp of August 20, 2018 was different from the stated mailing date of August 15, 2018.  (*Id.* ¶ 24; Dkt. No. 8-2, Ds' RJN, Ex. D at 17.[3])

On September 14, 2018, Plaintiff faxed an application dated September 13, 2018, and submitted a follow up letter dated October 2, 2018 to the AAB, noting the defect in the hearing notices, requested new notices to be sent and also informed that he would not be able to appear personally at the October 4, 2018 hearing due to health issues.  (Dkt. No. 1, Compl. ¶ 25; Dkt. No. 8-2, Ds' RJN, Exs. C & D.)  He also informed AAB that defects in the notices made them null and void.  (*Id.*)  He claims that even though the AAB had no jurisdiction, the Assessor reset the hearing from October 4, 2018 to February 14, 2019.  (Dkt. No. 1, Compl. ¶ 26; Dkt. No. 8-2, Ds' RJN, Ex. E.)  Plaintiff did not know the hearing had been reset unlawfully until January 30, 2019[4] when Elizabeth Miller informed him.  (Dkt. No. 1, Compl. ¶ 26.)  He claims that the Clerk of the AAB, Miller, McCracken and Werner were present at the October 4, 2018 hearing and even though they knew of the defective notices, they concealed that information from the AAB in violation of his due process rights.  (*Id.* ¶ 27.)

Due to health issues, Plaintiff was unable to prepare for the February 14, 2019 hearing and to appear personally so he faxed another request to continue on January 23, 2019.  (*Id.* ¶¶ 29, 30 Dkt. No. 8-2, Ds' RJN, Ex. F.)  He further reiterated that the hearing notices setting the October 4, 2018 hearing were defective and requested new and valid notices of hearing but none were sent but noted that the AAB continued the hearing to February 14, 2019.  (Dkt. No. 1, Compl. ¶ 30.)

Due to his illness, Plaintiff was unable to check his messages until February 7, 2019 and discovered several messages from Kathy, in the Assessment Appeals Section,

---

[3] Page numbers are based on the CM/ECF pagination.
[4] The complaint states January 30, 2020 but appears that Plaintiff mistyped the year.

where she stated that the Assessor would not agree to a July 2019 hearing date but suggested an August 14, 2019 hearing date.  (*Id.* ¶ 31.)  She also informed him that because it was his second request, he must agree to a two-year waiver.  (*Id.*)  On February 7, 2019, Plaintiff faxed a letter noting that he was not knowledgeable about the two-year waiver but "if law requires then he agrees to a two-year waiver."  (*Id.* ¶ 32; Dkt. No. 8-2, Ds' RJN, Ex. G.)  He also stated that this was his first request to continue because in his letter dated October 2, 2018, he informed the Appeal Board that the hearing notices setting the October 4, 2018 hearing were defective which rendered them null and void. (Dkt. No. 1, Compl. ¶ 32.)

On February 8, 2019, Kathy left another message requesting a two-year waiver. (*Id.* ¶ 33.)  In response, on February 12, 2019, Plaintiff faxed another letter noting that he had already agreed to a two-year waiver by his February 7, 2019 letter and further restated that he agreed to a two-year waiver if the law requires it.  (*Id.*; Dkt. No. 8-2, Ds' RJN, Ex. H at 28.)  On February 12, 2019, at 4:36 p.m. a voice mail message was left by Mr. George Seikaly, asking for two-year waiver but not explaining why Plaintiff's statement of waiver was not sufficient.  (Dkt. No. 1, Compl. ¶ 34.)  On February 13, 2019, he faxed another letter stating "I agree to a two-year waiver to process my request for continuance of hearing set for 2/14/19, if law requires it" and again explaining that he was not able to appear personally because of his illness.  (*Id.;* Dkt. No. 8-2, Ds' RJN, Ex. H at 30.)

On February 14, 2019, the AAB held a hearing and dismissed Plaintiff's assessment appeals for failing to appear.  (Dkt. No. 1, Compl. ¶ 35; Dkt. No. 8-2, Ds' RJN, Ex. I at 34.)  Plaintiff claims that the Clerk of the AAB and the Assessor knowingly and intentionally concealed Plaintiff's timely request for continuance.  (Dkt. No. 1, Compl. ¶ 25.)

On April 15, 2019, Plaintiff filed a timely request to reopen the appeals and received a notice of hearing set for August 15, 2019.  (*Id.* ¶ 36; Dkt. No. 8-2, Ds' RJN, Ex. J at 36.)  When he arrived, Alejandro Chavira, at the reception table, welcomed him

and provided him with a "REQUEST TO SPEAK" form to fill out.  (Dkt. No. 1, Compl. ¶ 37.)  Plaintiff filled out the form and checked the box for written findings request.  (*Id.* ¶ 38.)  However, Mr. Chavira fraudulently informed Plaintiff that there were no written findings of fact for a request to reopen the appeals and "he canceled Plaintiff request for written finding on that Form."  (*Id.*)  Plaintiff relied on Ms. Chavira's false statement and did not request written findings before the hearing.  (*Id.* ¶ 39.)  At the hearing, Ms. Miller, Clerk of the AAB, announced the appeal numbers and Plaintiff's name.  (*Id.* ¶ 40.)  The Clerk of the Board fraudulently stated that Plaintiff had filed his request to continue the hearing for the appeal assessment a day before the hearing that was set on February 14, 2019.  (*Id.*)  The AAB denied his request to reopen the appeals.  (*Id.* ¶ 41.)  Plaintiff made an oral request for written findings of fact but the Clerk of the Board stated he should have made the request before the start of the hearing.  (*Id.* ¶ 41.)  Supervisor Miller, who heads the Assessment Appeal Section and performs the AAB Clerk's duties, stated that Mr. Chavira worked in the Assessment Appeals Section and reported to her. (*Id.* ¶ 42.)  Plaintiff alleges that the Assessor, Ms. Miller and Mr. Chavira intended to deprive him of written findings so that he would be unable to discover the true facts which resulted in the deprivation of his constitutional right to due process.  (*Id.*)

On August 22, 2019, Plaintiff requested copies of the CDs for the hearings held on February 14, 2019 and August 15, 2019 with Ms. Miller.  (*Id.* ¶ 44.)  Even though Ms. Miller stated he would receive them in a week, he did not receive them until October 4, 2019.  (*Id.* ¶¶ 44-46.)   According to Plaintiff, the CDs revealed some fraudulent, wrongful and conspiratorial actions by the county employees depriving Plaintiff of his due process rights.  (*Id.* ¶ 47.)  He then sought the hearing CD of October 4, 2018 and was told the CDs would be ready in a week.  (*Id.* ¶¶ 48, 49.)  After several follow-up calls and messages, Plaintiff finally received it on February 7, 2020.  (*Id.* ¶¶ 50-54.)

On February 21, 2020, Plaintiff submitted a Government Tort Claim against the County of San Diego and its employees for violation of his civil rights and damages.  (*Id.* ¶ 56.)  Around March 10, 2020, Plaintiff received a "NOTICE OF RETURNED CLAIM"

dated March 3, 2020.  (*Id.* ¶ 57.)  The claim was returned because it was not presented within six months after the alleged incident of August 15, 2019.  (*Id.*)  The notice also stated "please be advised that a claim for a property tax refund must be made to the County's Treasurer-Tax Collector's Office."  (*Id.* ¶ 58.)  On August 14, 2020, Plaintiff mailed a timely response within one year of the alleged incident and asserted that the Notice of Returned Claims was void for two reasons: 1) the notice did not have the name and signature of the person supposed to have been designed by the San Diego County's Board of Supervisors under California Government Code section 911.3(a); and 2) the notice was rendered void by the false assertion that a claim for a property tax refund must be made to the County's Treasurer-Tax Collector's Office because the California State Board of Equalization publication 30 states that if the AASB decision was unfavorable and you intend to seek relief in superior court, you file a claim first with the Board of Supervisors before filing for judicial review.  (*Id.* ¶¶ 59, 60.)  Plaintiff also noted, in his August 14, 2020[5] document that the AAB hearing CDs had been edited.  (*Id.* ¶ 61.)  The County failed to respond to Plaintiff's document mailed on August 14, 2020.  (*Id.* ¶ 62.)

On March 24, 2021, Plaintiff spoke with Stefanie Osborn, a supervisor in the Claim and Investigation Division in the County of San Diego and was informed there were only three documents in his file: 1) initial claim document, 2) a correction to initial claim, and 3) San Diego County's Notice of Returned Claim dated 3/3/2020.  (*Id.* ¶ 64.)  He informed her that he mailed a document in response to the Notice.  (*Id.* ¶ 65.)  On March 25, 2021, at the request of Ms. Osborn, Plaintiff faxed the document to her.  (*Id.* ¶ 66.)  On March 26, 2021, Ms. Osborn acknowledged receipt of the document and would seek County Counsel's opinion and inform Plaintiff.  (*Id.* ¶ 67.)  On March 29, 2021, Ms. Osborn indicated that County Counsel had not gotten back to her.  (*Id.*)  Around April 8, 2021, Plaintiff received the County's Notice of Granting of Late Claim Application.  (*Id.*

---

[5] The Complaint alleges August 14, 2019 as the date of the letter mailed to the County about the CDs. (Dkt. No. 1, Compl. ¶ 61.)  It appears that Plaintiff intended to state it was his letter of August 14, 2020.

¶ 68.)  Around May 3, 2021, Plaintiff received the County's Notice of Rejection of Claim dated April 30, 2021.  (*Id.* ¶ 69.)

Plaintiff filed a complaint in this Court on November 1, 2021 alleging five causes of action: 1) 42 U.S.C. § 1983 claim for violation of his due process rights under the Fourteenth Amendment against all Defendants; 2) Failure to Train and Failure to Hire/Fire/Discipline against the County; 3) 42 U.S.C. § 1983 claim based on Official Policy, Practice or Custom against the County; 4) discrimination based on religion and ethnicity in violation of the United States Constitution against all Defendants; and 5) violation of California Civil Code section 52.1 against all Defendants.  (Dkt. No. 1, Compl.)  He seeks declaratory relief that the conduct, policies and practices of the AAB No. 4 are unconstitutional, general and compensatory damages, and punitive damages. (*Id.* at 21-22.)

## Discussion

### A.   Legal Standard as to Federal Rule of Civil Procedure 12(b)(1)

"It is a fundamental principle that federal courts are courts of limited jurisdiction. The limits upon federal jurisdiction, whether imposed by the Constitution or by Congress, must be neither disregarded nor evaded."  *Owen Equip. & Erection Co. v. Kroger,* 437 U.S. 365, 374 (1978).  Under Rule 12(b)(1), a party may move to dismiss for lack of subject matter jurisdiction.  Fed. R. Civ. P. 12(b)(1).  A Rule 12(b)(1) jurisdictional challenge may be facial or factual.  *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). "In a facial attack, the challenger asserts that the allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction."  *Id.*  When evaluating a facial attack, the court assumes the truth of the complaint's allegations and draws all reasonable inferences in plaintiff's favor.  *See Wolfe v. Strankman*, 392 F.3d 358, 362 (9th Cir. 2004).  Where the attack is factual, however, "the court need not presume the truthfulness of the plaintiff's allegations."  *Safe Air for Everyone*, 373 F.3d at 1039.  In resolving a factual dispute as to the existence of subject matter jurisdiction, a court may review extrinsic evidence beyond the complaint without converting a motion

8

to dismiss into one for summary judgment.  *Id.; McCarthy v. United States*, 850 F.2d 558, 560 (9th Cir. 1988).  "A party invoking the federal court's jurisdiction has the burden of proving the actual existence of subject matter jurisdiction." *Thompson v. McCombe*, 99 F.3d 352, 353 (9th Cir. 1996).  Here, Defendants appear to present a facial dispute as to the subject matter jurisdiction relying on the allegations in the complaint.

## B.    Federal Tax Injunction Act

All Defendants argue that Plaintiff's claims are barred by the Federal Tax Injunction Act ("TIA").  (Dkt. No. 8-1 at 15-16.[6])  Plaintiff responds that the TIA does not apply because there is no plain, speedy and efficient remedy in state court due to Defendants' fraud and conspiracy.  (Dkt. No. 24 at 12.)

The TIA provides that a district court "shall not enjoin, suspend or restrain the assessment, levy or collection of any tax under State law where a plain, speedy and efficient remedy may be had in the courts of such State." 28 U.S.C. § 1341.  "Based on a plain reading of the statute, the district court does not have jurisdiction over [a] Taxpayers' action if it seeks district court interference with California's tax assessment and collection process." *Jerron West, Inc. v. State of Cal., State Bd. of Equalization*, 129 F.3d 1334, 1337 (9th Cir. 1997).  "The only exception is where a state does not provide the Taxpayers with an adequate state remedy." *Id.*

"[T]he statute has its roots in equity practice, in principles of federalism, and in recognition of the imperative need of a State to administer its own fiscal operations." *Tully v. Griffin, Inc.*, 429 U.S. 68, 73 (1976).  The TIA "limit[s] drastically federal district court jurisdiction to interfere with so important a local concern as the collection of taxes." *California v. Grace Brethren Church*, 457 U.S. 393, 408-09 (1982) (internal quotation marks omitted).

---

[6] Page numbers are based on the CM/ECF pagination.

The TIA prohibits declaratory and injunctive relief. *Id.* at 411 ("because Congress' intent in enacting the Tax Injunction Act was to prevent federal-court interference with the assessment and collection of state taxes, we hold that the Act prohibits declaratory as well as injunctive relief"). In addition to the TIA's bar on interfering with a state's tax assessment, the Supreme Court has also recognized that the principles of comity bar a suit for damages brought in federal court under 42 U.S.C. § 1983 challenging a state tax assessment. *Fair Assessment in Real Estate Ass'n, Inc. v. McNary,* 454 U.S. 100, 113, 116 (1981). Relying on *McNary,* the Ninth Circuit rejected the taxpayer's argument that section 1983 is an exception to the bar under the Tax Injunction Act. *Hawaiian Tel. Co. v. State Dept. of Labor and Indus. Rels*, 691 F.2d 905, 910 (9th Cir. 1982) (noting that *McNary* did not definitely resolve the relationship between section 1983 and the [TIA], but "held that the principle of comity alone bars taxpayers' damages actions brought in federal courts under section 1983 to redress the allegedly unconstitutional administration of a state tax system").

If a "plain, speedy and efficient remedy" is not available in state court, a federal district court may exercise jurisdiction over a party's challenge to a state tax. *Lowe v. Washoe Cnty.*, 627 F.3d 1151, 1155 (9th Cir. 2010). Courts, however, "must construe narrowly [this] exception to the Tax Injunction Act." *Grace Brethren Church*, 457 U.S. at 413. For the jurisdictional prohibition to apply, the state court remedy need only meet "certain minimal *procedural* criteria." *Lowe*, 627 F.3d at 1155 (quoting *Rosewell v. LaSalle Nat'l Bank*, 450 U.S. 503, 512 (1981)). The plaintiff "must have access to 'a full hearing and judicial determination' of all federal constitutional objections to the tax." *Id. (*citing *Rosewell,* 450 U.S. at 513). Further, the state court remedy need not be "'the best remedy available or even equal to or better than the remedy which might be available in the federal courts.'" *Id.* at 1155-56 (citation and quotation marks omitted).

A state court's remedy is "plain" if the procedures available in state court are certain. *Direct Mktg. Ass'n v. Bennett*, 916 F.2d 1451, 1453 (9th Cir. 1990) (a state remedy "is not plain within the meaning of the [Act] . . . 'if there is uncertainty regarding

its availability or effect.'") (quoting *Ashton v. Cory*, 780 F.2d 816, 819 (9th Cir. 1986)). A remedy is "efficient" unless it imposes an "unusual hardship . . . requiring ineffectual activity or an unnecessary expenditure of time or energy." *Rosewell*, 450 U.S. at 518.

The Supreme Court and the Ninth Circuit have held that California's refund procedures constitute a plain, speedy and efficient remedy for taxpayers. *See Cal. v. Grace Brethren Church*, 457 U.S. 393, 413 (1982) (state law remedy was "plain, speedy and efficient" because appellees could seek a refund of their unemployment taxes through state administrative and judicial procedures and obtain state judicial review of their constitutional claims); *Franchise Tax Bd. v. Alcan Aluminum*, 493 U.S. 331, 338 (1990) ("California's [franchise tax] refund procedures constitute a plain, speedy, and efficient remedy."); *Jerron West, Inc. v. State of Cal., State Bd. of Equalization*, 129 F.3d 1334, 1339 (9th Cir. 1997) ("The Supreme Court and this court have concluded that California's tax refund remedy is generally a 'plain, speedy and efficient' remedy under the Act."); *Mandel v. Hutchinson*, 494 F.2d 364, 367 (9th Cir. 1974) ("We have held previously that the California refund procedure is a plain, speedy and efficient remedy.").

Relevant to this case, California provides a plain, speedy and efficient remedy for taxpayers to challenge a residential property tax.

> In California, a taxpayer may petition the County's Assessment Appeals Board for review of a locally assessed property tax and any relevant federal claims. *See* Cal. Rev. & Tax Code §§ 1601-16. The taxpayer may appeal a negative decision to the County Board of Supervisors by initiating an action for a tax refund. *Id.* §§ 5096-5107. If relief is not obtained through these administrative procedures, the taxpayer may bring an action in state court to recover the tax, with attorneys' fees and costs available if the tax assessment was made in violation of the California Constitution or statutory provisions. *Id.* §§ 5140-49.5. Most importantly, plaintiffs may raise tax-related § 1983 and constitutional claims in state court. *See Martinez v. California*, 444 U.S. 277, 283 n.7 (1980) (noting that state courts may entertain § 1983 claims); *United States v. County of Fresno*, 429 U.S. 452, 456 (1977) (involving plaintiffs who had sued in California state courts for property tax refund based on the alleged unconstitutionality of the tax).

21cv1847-GPC(AHG)

*Hilton v. Fair Issacs, Inc*., No. C-05-01285 RMW, 2005 WL 8177639, at *5 n. 7 (N.D. Cal. Aug. 8, 2005); *see also LA Live Props, LLC v. Cnty. of Los Angeles*, 61 Cal. App. 5th 363, 371-72 (2021) (describing California's three-step statutory scheme to challenge property tax assessment).

Plaintiff's complaint challenges Defendants' alleged unconstitutional administration of the state tax system governing his assessment appeal against individual employees of the County and the County seeking declaratory relief and damages under 42 U.S.C. § 1983.  (*See* Dkt. No. 1, Compl.)  The complaint seeks a declaration that the County, Assessor Department, Assessment Appeals Board No. 4 and Assessment Appeals Section's conduct policies and practices are unconstitutional.  (*Id.* at 21.)  Under the TIA, the Court must dismiss actions under § 1983 where taxpayers seek declaratory relief for constitutional violations in state tax administration when an adequate state remedy exists.  *Nat'l Private Truck Council, Inc. v. Oklahoma Tax Comm'n*, 515 U.S. 582, 586, 589 (1995) ("Though federal courts are obliged to hear § 1983 claims, it is clear that they may not award damages or declaratory or injunctive relief in state tax cases when an adequate state remedy exists.").  Because the declaratory relief sought by Plaintiff interferes with the administration of the state tax system, it is barred under the TIA.

Plaintiff also seeks general and compensatory damages as well as punitive damages against the individual defendants.  (Dkt. No. 1, Compl. at 22.)  Because the gravamen of Plaintiff's relief for damages interferes with the state's administration of its tax system, the TIA bars the relief Plaintiff seeks.  *See Jerron West, Inc. v. State of Calif. State Bd. of Equalization*, 129 F.3d 1334, 1337–38 (9th Cir. 1998) (Act is "broadly construed" and prohibits relief even where restraint on taxation would be indirect); *see e.g., Comenout v. State of Wash*. 722 F.2d 574, 578 (9th Cir. 1983) (TIA "deprives the district court of jurisdiction over the claims of unlawful arrest and assault" because "maintenance of this suit against the Director of the Department of Revenue and the

21cv1847-GPC(AHG)

Chairman of the Liquor Control Board would intrude on the enforcement of the state scheme.").

Further, even if the TIA does not explicitly bar Plaintiff's relief for damages under § 1983, they must be barred under the doctrine of comity. *See McNary*, 454 U.S. at 116. "Because of principles of comity and federalism, Congress never authorized federal courts to entertain damages actions under § 1983 against state taxes when state law furnishes an adequate legal remedy." *Nat'l Private Truck Council, Inc. v. Oklahoma Tax Comm'n*, 515 U.S. 582, 587 (1995) (citing McNary, 454 U.S. at 116). "[T]he comity doctrine is more embracive than the TIA." *Levin v. Commerce Energy, Inc.*, 560 U.S. 413, 424, 432 (2010) (noting that federal courts have flexibility in choosing among threshold grounds for dismissal; dismissing complaint about allegedly discriminatory state taxation under comity grounds).

In *McNary*, the plaintiffs alleged that a state's property tax assessment procedures did not comport with due process, and sought damages from the tax collectors pursuant to 42 U.S.C. § 1983. *Id.* at 106. The Court explained that "the award of [1983] damages would first require a federal-court declaration that respondents, in administering the state tax, violated petitioners' constitutional rights." *Id.* at 106-07. Such a determination would be fully intrusive on the enforcement of the state tax scheme. *Id.* at 113-14. The Supreme Court held the suit was barred by comity principles. *Id.* at 116; *see also Berry v. Alameda Bd. of Sup'rs*, 753 F. Supp. 1508, 1514-15 (N.D. Cal. 1990) (granting summary judgment on claims for discrimination that adoption and implementation of state constitutional limitation on real property taxes violated the plaintiffs' due process and equal protection rights under the U.S. Constitution for lack of subject matter jurisdiction). Therefore, the TIA bars the Court from considering Plaintiff's causes of action unless there is no plain, speedy and efficient remedy in state court.

In response, Plaintiff argues he does not have a plain, speedy and efficient remedy in state court because he was fraudulently deprived of written findings of fact, by relying on Mr. Chaviro, for his request to reopen an appeal which is required for a state court to

review an AAB's decision.  (Dkt. No. 24 at 12-13.)  Defendants reply that written finding of fact is not a requirement to file an action in state court and Plaintiff had remedies to pursue either a refund action or a writ of mandate.  (Dkt. No. 25 at 6.)

Plaintiff fails to provide legal support that the absence of written findings of fact bars him from filing relief in state court.  California's Board of Equalization Property Tax Rule 325 provides that a decision by the Board becomes final under three scenarios with one being a vote entered where no findings of fact have been requested by either party and all parties are present at the hearing.  (Dkt. No. 8-2, Ds' RJN, Ex. O at 139.)  Once a Board's decision is final, a taxpayer may bring a refund action in superior court against a county.  *See* Cal. Rev. & Tax Code § 5140.

Moreover, Plaintiff's reliance on *Beck v. Cnty, of San Diego*, 2007 WL 1345849 (Cal. Ct. App. 2007) (unpublished) is misplaced.  (Dkt. No. 24 at 16.)  In *Beck*, the plaintiffs appealed an adverse ruling on a claim for refund of allegedly excessive property taxes.  *Id.* at *1.  Neither party requested written findings of fact.  *Id.*  The trial court held a trial.  *Id.*  On appeal, the court of appeal found that the Becks had failed to show that the Board applied a method of valuation that was arbitrary, in excess of its discretion, or in violation of the standards prescribed by law and denied them relief.  *Id.* at *5.  The court explained that without written findings of fact, the court did not know what valuation method the Board applied.  *Id.*  The absence of written findings was not a bar to seek review by the state court but was relevant on whether the Becks had met their burden.

In this case, Plaintiff challenges a procedural ruling and not a substantive ruling of the Board.  California provides an avenue for Plaintiff to seek relief where there is no adequate remedy at law by filing a writ of mandate.  *See* Cal. Code Civ. Proc. § 1086 ("The writ must be issued in all cases where there is not a plain, speedy, and adequate remedy, in the ordinary course of law. It must be issued upon the verified petition of the party beneficially interested."); *Mandel v. Hutchinson,* 494 F.2d 364, 367 (9th Cir. 1974) (noting that taxpayer may obtain a writ of mandate if there is no adequate remedy at law

in determining whether state remedies were available under TIA); *Flightsafety Int'l. Inc. v. Assessment Appeals Bd.,* 105 Cal. App. 4th 620, 626-27 (2003) (writ of mandate seeking Appeals Board's duty under section 1604(d) to enter taxpayer's opinion of value on the assessment rolls for the tax years at issue); *Auerbach v. Los Angeles Cnty. Assessment Appeals Bd. No. 4*, 2003 WL 1788797, at *4-8 (Cal. Ct. App. 2003) (unpublished) (writ of mandate addressing timeliness, denial of application for failing to appear and whether denying reinstatement were final decisions in tax assessment appeals). Because Plaintiff has a plain, speedy and efficient remedy in state court, the Court lacks subject matter jurisdiction over the case and grants Defendants' motion to dismiss with prejudice because any amendment would be futile. *See City of Burbank v. State of Nev*., 658 F.2d 708, 709 (9th Cir. 1982) (affirming dismissal with prejudice for lack of subject matter jurisdiction); *Hilton,* 2005 WL 8177639, at *6 (granting motion to dismiss without leave to amend).[7]

## Conclusion

Based on the reasoning above, the Court GRANTS Defendants' motions to dismiss for lack of subject matter jurisdiction and DISMISSES the complaint with prejudice. The hearing set on September 23, 2022 shall be **vacated.**

IT IS SO ORDERED.

Dated:  September 20, 2022

Hon. Gonzalo P. Curiel
United States District Judge

---

[7] Because the Court grants dismissal for lack of subject matter jurisdiction, it need not address Defendants' additional arguments that the complaint is barred by the statute of limitation, fails to state a claim under Rule 8 and Rule 9(b), fails to state a claim under § 1983, fails to state a claim under state law and fails to state a *Monell* claim against the County.  (Dkt. No. 8-1, Dkt. No. 9-1.)

21cv1847-GPC(AHG)

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

21cv1847-GPC(AHG)